DiPONIO v. COCKRUM.

1. Townships — Zoning Ordinances — Statutes — Publication of Maps.

Township zoning ordinance of which notice of enactment had been given in accordance with the statute authorizing the adoption of such ordinances not requiring that maps be published but requiring publication of statement as to where maps were available for examination *held*, to have been validly enacted, the general statute setting forth the general requirements for publication of township ordinances not being applicable where specific procedure had been spelled out in the zoning ordinance statute (CL 1948, §§ 41.191, 125.279; CLS 1961, § 125.285).

2. Same—Zoning Ordinances—Agricultural Districts—Uses Permitted.

Township zoning ordinance provisions relative to agricultural district limiting use of premises and structures thereon to uses for "general farming including horticulture, dairying, livestock and poultry raising, farm forestry, and similar bona fide agricultural enterprises or uses of land and structures" and limiting signs to "2 nonilluminated signs not greater than 12 square feet each in area pertaining to the sale or lease of the premises or advertising the bona fide use of the property or sale of the produce raised thereon" is construed as limiting use of premises to permission for sale by a farmer of farm produce grown as a result of his farming operations within any portion of the township zoned as an agricultural district (Salem Township Zoning Ordinance, §§ 4.01, 5.01, 5.02, 7.01, 7.02).

Souris, J., dissenting in part.

---

References for Points in Headnotes

[1] 58 Am Jur, Zoning § 14 *et seq.*
[2] 58 Am Jur, Zoning § 75 *et seq.*
Construction and application of terms "farm," "farming," or the like in zoning regulations. 146 ALR 1201.

Appeal from Washtenaw; Breakey, Jr. (James
R.), J. Submitted February 7, 1964. (Calendar No.
57, Docket No. 50,168.) Decided June 1, 1964.

Bill by Angel DiPonio against Denver Cockrum to
restrain use of farm property, under 1957 zoning
ordinance, for sale of agricultural produce. Bill dis-
missed. Plaintiff appeals. Reversed and remanded
for entry of decree enjoining sale of produce except
that grown within zoned agricultural district.

*George J. Schmeman* (*Allen & Tendler* and *Nor-
man H. Tendler,* of counsel), for plaintiff.

*Stripp, Gable & Roberts* (*George E. Stripp,* of
counsel), for defendant.

Adams, J. This case involves the validity and the
construction of a township zoning ordinance.

The parties are adjacent landowners, residents of
Salem township, Washtenaw county. Plaintiff re-
sides on approximately 100 acres. Defendant owns
27 acres on which he resides and on which he has
maintained a produce stand since 1960.

Plaintiff sought to enjoin defendant selling from
a produce stand on defendant's land all produce not
grown thereon, claiming it was in violation of the
township zoning ordinance. Defense was submitted:
(1) that the ordinance was invalid; and (2) that the
produce stand operation did not constitute a viola-
tion of the ordinance.

At close of plaintiff's proofs, defendant moved to
dismiss. The trial court granted dismissal, hold-
ing that the ordinance did not prohibit defendant's
operations, and that, this being the case, a ruling on
the validity of the ordinance was not necessary.

Since our disposition of this matter is different
from that of the trial court, and since the question

of the validity of the ordinance was briefed and presented to this Court, it will be necessary to consider that question first. It provides that the "map, shall be as much a part of this ordinance as if the matters and information set forth therein were all fully described herein." Defendant contended that since there was no publication of the map there was no validly enacted ordinance. CL 1948, § 125.279 (Stat Ann 1958 Rev § 5.2963[9]), provides that *prior to* the enactment of a zoning ordinance there shall be 2 publications of a notice of public hearing on the same, together with a statement in said publications as to the time and place where zoning maps are available for public examination. (Section 15 of the same act [CLS 1961, § 125.285 (Stat Ann 1958 Rev § 5.2963[15])] pertaining to the enactment of an *interim* zoning ordinance provides that:

"The publication of maps and other data pertinent to any such ordinance shall not be required to be made, but the publication of the ordinance shall state the place where the maps and other information are available for examination.")

In this case notice of the proposed enactment of a zoning ordinance was given in accordance with the statute. The ordinance was adopted January 7, 1957, at a regular township board meeting and given "effect immediately upon the expiration of the existing interim zoning ordinance and be in force from and after the earliest date allowed by law." The interim zoning ordinance expired January 18, 1957. CLS 1961, § 125.281 (Stat Ann 1963 Cum Supp § 5.2963[11]), authorizes a township board to give a zoning ordinance immediate effect absent publication. Defendant cites CL 1948, § 41.191 (Stat Ann 1961 Rev § 5.6[1]), which sets forth the general requirements for publication of township ordinances, and *Village of Durand* v. *Love,* 254 Mich 538, neither

of which is controlling here. The specific procedure spelled out in the zoning ordinance statute takes, precedence over the general statute.

The second question is whether defendant's operation of a produce stand upon his property was in violation of the ordinance.*

---

* AG AGRICULTURAL DISTRICT

"7.01 Uses permitted. In all AG districts no building or land, except as otherwise provided in this ordinance, shall be erected or used except for 1 or more of the following specified uses:

"(a) All uses permitted in R–1 and R–1–F districts.

"(b) Farm buildings.

"(c) General farming, including horticulture, dairying, livestock and poultry raising, farm forestry and similar bona fide agricultural enterprises or uses of land and structures, except farms operated wholly or in part for the disposal of wastes from rendering plants, garbage, sewage, offal and rubbish.

"(d) Public and private stables, riding academies, veterinary offices and animal clinics.

"(e) Dog kennels and raising of fur-bearing animals, when approved by the board of appeals. (See section 13.)

"(f) Airports, landing fields and platforms, hangars, masts and other facilities for the operation of aircraft after public hearing and approval of the board of appeals. (See section 13.)

"(g) Carnivals, outdoor circuses, or migratory amusement enterprises, subject to the approval of the board of appeals. (See section 13.)

"7.02 Signs. Two nonilluminated signs not greater than 12 square feet each in area pertaining to the sale or lease of the premises or advertising the bona fide use of the property or sale of the produce raised thereon shall be permitted on the premises."

The pertinent provisions of R–1 and R–1–F districts are as follows:

"ARTICLE 4.

"R–1 ONE-FAMILY RESIDENTIAL DISTRICT.

"Section 4.01 Uses permitted. In all R–1 districts no building or land, except as otherwise provided in this ordinance, shall be erected or used except for 1 or more of the following specified uses:

"(a) One-family dwellings.

"(b) Churches, public schools, public libraries, private educational institutions.

"(c) Public hospitals (but not including institutions for the care of feeble-minded or insane) after approval granted by the board of appeals.

"(d) Community buildings, country clubs, fraternal lodges, or similar civic or social clubs, (but not a residential club, or a club operated as a commercial enterprise), after approval granted by the board of appeals.

"(e) The use of a parcel, lot or lots for the carrying on of gardening activities or the production of agricultural products through the direct tilling of the soil, together with facilities for the sale of the products thus produced thereon shall be permitted, provided, that

said facilities for the sale of any such products shall be located on the premises not nearer than 20 feet from the front lot line.

"(f) The use of open land for public or privately owned and operated parks, picnic groves, golf courses, or similar facilities for outdoor exercises and recreation, which may or may not be operated for profit, provided such use does not impair the natural appearance of such land or tend to produce noise or annoyance to surrounding properties, shall be permitted after approval granted by the board of appeals. (See section 13.)

"(g) Accessory buildings or uses customarily incident to any of the above permitted uses, when located on the same or adjoining lot and not involving any business, profession, trade or occupation. One private garage for each residential lot in which there is housed not more than 3 motor vehicles, not more than 1 of which shall be a commercial vehicle, shall be considered a legal accessory use, provided, however, any such commercial vehicle shall not exceed 1-1/2 tons capacity; and provided further, that no moving vans shall be housed in private garages.

"(h) The storage or parking or use of moving vans, automobile trailers or trailer coaches or similar dwellings, tourist cabins or tents shall not be considered a legal accessory use in an R-1 district, except that a temporary permit may be issued for the parking of 1 house trailer, for not to exceed 6 weeks within any calendar year, when occupants are nonpaying guests. This shall not prohibit the storage of 1 unoccupied house trailer, which is the property of the occupant of the house. (See section 3.11.)

"(i) Publicly-owned building, public utility buildings, telephone exchanges, transformer stations and substations, after approval granted by the board of appeals, as being not injurious to the surrounding neighborhood and in accord with the spirit and purpose of this ordinance. (See section 13.)   *   *   *

"Article 5.

"R-1-F Residential Farm District.

"5.01 Uses permitted. In all R-1-F districts no building or land, except as otherwise provided in this ordinance, shall be erected or used except for 1 or more of the following specified uses:   *   *   *

"(b) Nurseries and gardening.

"(c) A home occupation dwelling may be constructed and used provided no goods are publicly displayed or sold, except those produced, on the premises and no sign or advertisement is shown thereon other than a sign 2 square feet in area bearing the name and occupation of the practitioner.

"(d) Raising and keeping of fowl and domestic animals, provided they are properly housed and fenced and do not become a nuisance.

"(e) Public utility buildings such as substations, without service or storage yards.

"5.02 Signs. One nonilluminated sign not greater than 8 square feet in area pertaining to the sale or lease of the premises or advertising the bona fide use of the property or sale of the produce raised thereon shall be permitted on the premises provided that nothing herein contained shall be construed to change or expand the use of signs for home occupations. When the frontage of the property is 300 feet or greater 2 signs having the size and use described above for this area may be permitted on the premises.".

The extent of the defendant's farming operations upon the 27 acres where the produce stand is located is not too clear upon the record in this case. There may or may not have been some farming on this tract. In any event, defendant was carrying on a considerable farming operation in an adjacent county some several miles distant where he was growing corn, cucumbers, and muskmelon that were taken in large trucks to the Farmer's Market in Detroit and to the warehouses of various supermarkets. Some of this produce was trucked to and sold at defendant's stand, as well as other produce —fruits and vegetables—out of season and not grown on his home premises.

The trial court held:

"Taking the ordinance as it is stated, there is no prohibition contained in said ordinance against the operation of a stand by a farmer, whose land is in the zone 'AG agricultural district', from selling produce from the land that is farmed by the operator of the stand in 1 general farming operation. Certainly there is no prohibition of that. Farmers from time immemorial have had the right to sell the produce from their farms."

Section 7.01(c) permits "bona fide agricultural enterprises or uses of land and structures." Was the trial judge correct in construing this to mean that a farmer should have the right to sell the produce from his *farms* wherever those farms might be situated and also, possibly, to truck produce from the Farmer's Market in Detroit back to his produce stand? A careful consideration of all of the pertinent sections of the ordinance does not permit this construction.

Section 7.02 dealing with signs permits signs "advertising the bona fide use of the property or sale of *the produce raised thereon.*" Sections 4.01 and

5.01 are not limitations upon other uses permitted under 7.01, but it is significant that under 4.01, subd (e), where use of the land is allowed for gardening or agricultural products it is limited in use "for the sale of the products *thus produced thereon.*" Section 5.01, subd (c), permits the sale only of goods *"produced, on the premises"* and 5.02 specifically provides for "advertising the * * * sale of *the produce raised thereon."*

In reaching his decision, the trial judge was impressed with the fact that certain commercial uses are permitted in an AG agricultural district, such as public and private stables, riding academies, veterinary offices, animal clinics, dog kennels, raising of fur-bearing animals when approved by the board of appeals, airport landing fields, carnivals, outdoor circuses or migratory amusement enterprises. However, all of these uses are either of a rural or of a transitory character and are generally more in keeping with an agricultural than a commercial district.

The zoning ordinance should be construed to permit the sale by a farmer of farm produce grown as a result of his farming operation carried on *within* that portion of the township zoned AG agricultural district.

Remanded for entry of a new decree enjoining the defendant from the sale of agricultural produce upon his property except for such produce as may be grown by him as a result of his farming operations conducted within the AG agricultural district. Costs to appellant.

KAVANAGH, C. J., and DETHMERS, KELLY, SMITH, and O'HARA, JJ., concurred with ADAMS, J.

SOURIS, J. *(for reversal and remand for further proceedings).* The chancellor granted defendant's

motion to dismiss made at conclusion of plaintiff's proofs. He did so on the ground that it was not a violation of Salem township's permanent zoning ordinance for defendant to sell, from a stand located in his Salem township property zoned for agricultural uses, produce not grown on that land. I think the chancellor erred.

The pertinent provisions of the ordinance are set forth in the footnote in Mr. Justice Adams' opinion. Among the land uses permitted in an agricultural district in Salem township, section 7.01(a) includes by reference those uses permitted by articles 4 and 5 of the ordinance. Uses permitted by article 4, in turn, include "the production of agricultural products through the direct tilling of the soil, together with facilities *for the sale of the products thus produced thereon*" (see section 4.01[e], emphasis added). A similarly restricted use is found in section 5.01(c) of article 5. In neither case may produce or goods not produced on the land be sold thereon. The chancellor erred in holding that the provisions of sections 4.01(e) and 5.01(c) did not bar what plaintiff's proofs established defendant was doing upon his land in Salem township. He should not have granted defendant's motion to dismiss before putting defendant to his proofs.

Since the order of dismissal must be reversed and this cause remanded for further proceedings, I do not believe that we should pass upon the validity of the ordinance, the chancellor expressly having abstained from ruling thereon and the defendant not yet having offered any evidence with respect to his claim of such invalidity.

I would reverse and remand for further proceedings and I would allow plaintiff to tax his costs of this appeal.

Black, J., did not sit.