TIRPACK, ZONING ADMR., APPELLEE, *v.* MARO ET AL., APPELLANTS.

[Cite as Tirpack v. Maro, 9 Ohio App. 2d 76.]

(No. 4629—Decided January 11, 1967.)

Mr. *Frank Woychik*, city solicitor, for appellee.
Mr. *Phillip A. Crino*, for appellants.

GUERNSEY, J. (Presiding). This is an appeal from a judgment of the Common Pleas Court of Mahoning County in an injunction action brought by the Zoning Administrator for the city of Campbell against the defendants, Joseph Maro and Stephen Maro, doing business as Maro Brothers, to enjoin them from operating a filling station, it being claimed that their operation is in violation of zoning ordinance No. 60-2963 of that city adopted January 9, 1960. Upon trial the lower court found the ordinance valid, the operation in violation thereof, and granted a permanent injunction against such operation. The appeal being on questions of law and fact the action is now before this court for trial *de novo* on the transcript of evidence adduced in the lower court, as stipulated by the parties to this appeal.

The action involves two basic issues: (1) Whether the zoning ordinance is unenforcible against these defendants because, after the adoption thereof, the zoning map was not published along with the text of the ordinance; and (2) whether it is unenforcible against these defendants because the use of the premises for filling station purposes is the continuation of a use existing at the time of the adoption of the ordinance, which became a nonconforming use by reason of such adoption.

It is undisputed in evidence, and acknowledged by the plaintiff, that the text of zoning ordinance No. 60-2963 contains no language setting forth the boundaries of the respective zones. or use districts, purporting to be created by the ordinance, and that the only reference to such boundaries is Section 42.1 thereof, reading as follows:

"MAP: The aforesaid districts are bounded and defined on a map entitled 'ZONING MAP OF THE CITY OF CAMPBELL, OHIO,' adopted on the 9th day of January, 1960, and certified by the City Engineer and Zoning and Planning Commission, which map accompanies this ordinance, and is hereby made a part thereof."

It is further undisputed, and acknowledged by the plaintiff, that no map of any character was published along with the text of the ordinance following its adoption on January 9, 1960.

A review of Chapter 713 of the Revised Code reveals no statutes dealing specifically with the manner of, or requirements for, publication by municipalities of a zoning ordinance upon its adoption. However, in application to cities not having charters providing otherwise, Sections 731.20, 731.21, 731.22, and 731.26 of the Revised Code provide in pertinent parts as follows:

Section 731.20. "* * * Ordinances of a general nature * * * shall be published as provided by Sections 731.21 and 731.22 of the Revised Code before going into operation. No ordinance shall take effect until the expiration of ten days after the first publication of such notice. * * *"

Section 731.21. "All municipal ordinances * * * required by law or ordinance to be published, shall be published as follows:
"* * *"

Section 731.22. "The publication required in Section 731.21 of the Revised Code shall be for the following times:
"(A) Ordinances * * * once a week for two consecutive weeks;
"* * *"

Section 731.26. "It is a sufficient defense to any suit or prosecution under an ordinance, to show that no publication or posting was made as required by Sections 731.21 to 731.25, inclusive, of the Revised Code."

It follows from those statutes that zoning ordinances, being ordinances of a general nature, shall be published once a week for two consecutive weeks before going into operation, and if not so published, it is a sufficient defense to any suit or prosecution under such ordinance to show that no publication was made.

Those and other sections were construed by Judge Turner in *State* v. *Waller* (1944), 143 Ohio St. 409, as not prohibiting, in an ordinance which would be unintelligible when standing alone, the incorporation by reference of some statute or other ordinance an examination of which will make the ordinance in question intelligible. In such event, however, the ordinance, or, as held in the *Waller case*, the regulation, must be published in full including a full publication of the matter so incorporated. The courts of Ohio, so far as we have been able to determine, have made no specific determination as to the requirements of publishing a map incorporated by reference. Judge Turner alludes to this problem in the *Waller case*, at page 415:

"Exceptions are to be found, however, where the ordinances establish the grades of streets and refer to maps and books *on file in the archives* of the city. See *City of Napa* v. *Easterby*, 76 Cal., 222, 18 P., 253. *The same* might be said of other ordinances referring to maps, specifications, and other data *on file in a public office* in respect of the letting of contracts. *However, we have no such question before us.*" (Emphasis added.)

The only references we find in Chapter 713 of the Revised Code to maps, their filing or disposition, are those contained in Section 713.12 relating to the hearing before adoption and reading as follows:

"* * * During such thirty days [prior to hearing] the text or copy of the text of such ordinance, measure, or regulation, together with the maps or plans or copies thereof forming part of or referred to in such ordinance, measure, or regulation and the maps, plans, and reports submitted by the planning commission, board, or officer shall be on file, for public examination, in the office of the clerk of the legislative authority or in such other office as is designated by the legislative authority. * * *"

It will be observed from those provisions, and from the lack of other provisions, that, insofar as the statutes of Ohio pertaining to municipal zoning are concerned, it would be possible to have a zoning ordinance without any maps, that there may be several maps involved in the proceedings prior to adoption of a zoning ordinance, and that there is no provision for any zoning map, as such, to be adopted, nor any provision requiring or determining the place of filing of a zoning

map after the adoption of a zoning ordinance. We also do not find any provision in the zoning ordinance itself providing for the fact or place of filing of the zoning map after the adoption of the zoning ordinance. Thus we have no provision for file, after adoption, in a public archive or public office. In *Village of Durand* v. *Love* (1931), 254 Mich. 538, 236 N. W. 855, the Supreme Court of Michigan said, at page 540:

"An ordinance sometimes may refer to a public record already established by lawful authority and become effective without publication of such record as part of the ordinance. But Exhibit A was drafted solely for the purpose of the ordinance and to define the fire limits, had no prior official approval and had no purpose, use, force, or official sanction except as it was given by and as part of the ordinance. An ordinance cannot at the same time establish a paper as a public record and also incorporate it by reference as a previously established public record. Without publication of the map, the ordinance was not published in full, did not comply with the statute, and is void. * * *"

Further illustrative of the uncertainty and the problems here raised is the testimony of Katherine L. Garman, Clerk of Council of the city of Campbell, wherein she identifies plaintiff's Exhibit 4 (a black and white printed map) as "a zoning map of the city of Campbell" and as "part of the Ordinance 60-2963," and later identifies plaintiff's Exhibit No. 44 (consisting of 22 colored sheets) as "a map of the city of Campbell," of which Exhibit 4 is a "replica" of the first page. When asked if Exhibit 44 was the map presented at the public hearing to the proponents and opponents of the zoning plan, her reply was ambiguous, "Well, Mr. Woychik, I do know at the time of the public hearing I was, of course, busy taking notes; I do know that reference was made to the various colors on the map, designating the different zones." She then testified that Exhibit 4 "is the identical map that was submitted to council by the Zoning and Planning Commission as reflected by your [her] minutes," and that Exhibit 44 "was submitted as part of the exhibits at the public hearing showing a more detailed map of the city of Campbell." The minutes of the meeting of council of January 9, 1960 (plaintiff's Exhibit 3), show that amendments to the "map" were adopted by council prior to the final pas-

sage of the zoning ordinance, and plaintiff's Exhibit 4, though titled "Zoning Map City of Campbell Ohio" and certified by one Theodore Dastol, presumably the city engineer, does not contain any certification by any "Zoning and Planning Commission" as provided in section 42.1 of the zoning ordinance.

The plaintiff has contended, citing *Burmore Co.* v. *Smith* (1940), 124 N. J. Law 541, 12 A. 2d 353, and *City of Newburyport* v. *Thurlow* (1949), 324 Mass. 40, 84 N. E. 2d 450, that publication of the zoning map along with the text of the ordinance is not required by law. However, in the *Burmore case* the map was on file and it was not *specifically* made a part of the ordinance by reference or otherwise. Compare, also, *Slattery* v. *Township of Caldwell* (1964), 83 N. J. Super. 317, 199 A. 2d 670. In the *City of Newburyport case* the map was not *specifically* made a part of the ordinance by reference or otherwise, and the court made no comment or decision as to the requirements of publication. Compare *Inhabitants of West Springfield* v. *Mayo* (1928), 265 Mass. 41, 163 N. E. 653.

On the other hand, the majority rule, the best rule, and *the rule which we find applicable,* is set forth in the syllabus of the Supreme Court of Nebraska in the case of *Board of County Commissioners of County of Sarpy* v. *McNally* (1959), 168 Neb. 23, 95 N. W. 2d 153:

"1. The statutory provision, referred to in the opinion, that a zoning resolution adopted by a county board shall be published in book or pamphlet form or in a newspaper published and of general circulation in the county is mandatory.

"2. The statutory provision mentioned above requires that the entire zoning resolution, including any map, plat, or zoning plan attached to, made a part of, or referred to in the resolution, must be published.

"3. A failure to comply with the statutory provision mentioned above prevents a zoning resolution from becoming valid, effective, or enforceable.

"4. It cannot be presumed that a county zoning resolution was published in the manner provided by law when the proof establishes it was not.

"5. Invalid legislation confers no rights and imposes no duties or obligations. Legally it is as though it had never been composed or adopted."

In that case, as here, the text of the resolution did not describe the boundaries of the districts, but contained the language, "The boundaries of such districts are hereby established as shown on the Zoning Plan which accompanies and is hereby made a part of this regulation." The zoning plan, or map, was never published along with the text of the resolution. In his opinion, Mr. Justice Boslaugh fully discusses and grounds his conclusions on decisions of similar nature from the states of Alabama, Arkansas, California, Connecticut, Michigan, Minnesota, New York, Pennsylvania and Tennessee. In addition to the decisions he thus cites should be cited the later cases of *Keeney* v. *Village of LeRoy* (1964), 22 App. Div. 2d 159, 254 N. Y. S. 2d 445, and *Lavitt* v. *Pierre* (1964), 152 Conn. 66, 203 A. 2d 289. It will also be observed that in the 1964 decision of *DiPonio* v. *Cockrum* (1964), 373 Mich. 115, 128 N. W. 2d 544, the Supreme Court of Michigan arrived at a view contrary to that indicated by the case of *Village of Durand* v. *Love* (1931), 254 Mich. 538, 236 N. W. 855, cited in this opinion, *supra*, and also in the *McNally case*. However, this 1964 decision (*DiPonio*) was based on specific provisions of the Michigan statutes "that the publication of maps and other data pertinent to any such ordinance shall not be required to be made, but the publication of the ordinance shall state the place where the maps and other information are available for examination." See, also, *County of Winnebago* v. *Niman* (1947), 397 Ill. 37, 72 N. E. 2d 818, and *County of Winnebago* v. *Cannell* (1941), 376 Ill. 277, 33 N. E. 2d 478.

Specifically applied to the facts and the issues joined herein, we, therefore, conclude that where a zoning ordinance of a noncharter municipality, adopted pursuant to the provisions of Chapter 713, Revised Code, does not describe in the text thereof the boundaries of the zones, or districts, thereby to be created, but provides, instead, that such districts are bounded and defined on a map identified by title, date and certification, "which map accompanies this ordinance, and is hereby made a part thereof," in order to comply with the provisions of Sections 731.20, 731.21, and 731.22, Revised Code, pertaining to publication of ordinances before going into operation, it is mandatory that such map be published along with the text of the ordinance, and when it has not been so published, then, as prescribed by

Section 731.26, Revised Code, it is a sufficient defense to any suit or prosecution under the zoning ordinance to show that no publication of the zoning map was thus made.

Upon such conclusions, the judgment of this court must be for the defendants and the petition of the plaintiff must be dismissed at his costs. Such conclusions make moot any supposed issue raised by the pleadings or the evidence as to whether the use of the premises by the defendants was in violation of the requirements set forth in the ordinance. This being an appeal on questions of law and fact the judgment of the Common Pleas Court for the plaintiff is superseded by the judgment of this court for the defendant.

*Judgment for defendant and petition dismissed.*

YOUNGER and GRAY, JJ., concur.

YOUNGER, P. J., and GUERNSEY, J., of the Third Appellate District, and GRAY, J., of the Fourth Appellate District, sitting by designation in the Seventh Appellate District.