148

VILLAGE OF WINTERSVILLE ET AL., APPELLANTS, *v.* ARGO SALES
CO., INC., ET AL., APPELLEES.

[Cite as Wintersville v. Argo Sales Co. (1973),
35 Ohio St. 2d 148.]

(No. 72-645—Decided July 11, 1973.)

*Mr. Milton A. Hayman, Mr. Andrew Miller* and *Mr. Adam E. Scurti*, for appellants.
*Mr. Nathan Stern*, for appellees.

CORRIGAN, J.   Ordinance No. 186, as presented to the village council by the Planning Commission, provided a comprehensive zoning plan for the village of Wintersville, by dividing the village into various districts and prescribing standards for each of the districts, providing supplementary standards, and providing a method of administration and enforcement of the ordinance.

It was introduced in the village council at a special meeting on November 26, 1957, and read for the first time. According to the minutes of that meeting, a hearing was set for December 27, 1957, and the clerk was ordered to post notices.

On December 5, 1957, at a regular meeting of the council, Ordinance No. 186 was read for the second time.

On December 27, 1957, at a special meeting of the council, Ordinance No. 186 was read for the third time. The minutes of that meeting indicated that no member of the public was present to object to the passing of this ordinance and it was passed by a vote of 5-0. The ordinance was then entered in the record of ordinances book kept by the clerk. There was no certification by the clerk showing publication or posting of the ordinance.

In conjunction with the consideration of Ordinance No. 186, a comprehensive zoning map of the village of Wintersville was prepared and kept on file in the village hall during the reading of the ordinance and after the passage thereof.

The legislation was declared to be an emergency ordinance, and took effect and was in full force immediately upon its passage.

The above facts are stipulated by the village of Wintersville and the defendants. In addition, at the trial further evidence was offered by intervening plaintiffs.

In his testimony at the trial, Raymond E. Wilson, clerk of the village council in 1957 and 1958, testified upon cross-examination, in connection with the posting of Ordinance No. 186, as follows:

"Q. Now this map that you are talking about was not posted with the ordinance [Ordinance No. 186] in the five places?

"A. The map wasn't, no.

"Q. Do you recall the date that you posted this [Ordinance No. 186]? Was that after the first reading?

"A. I didn't post them until they were passed and signed by the mayor and signed by the clerk; then they were posted."

Appellees argue that the provisions of R. C. 731.25, relative to the type of public notice to be given a proposed zoning ordinance, are mandatory; that when the council chooses to post the proposed ordinance in five public places, both the text of the ordinance and the map to which it

applies must be posted in each of the five public places; and that posting the map at a single location is not compliance with the statute.

Appellants contend that since this ordinance was passed as an emergency ordinance it went into immediate effect under R. C. 731.30, notwithstanding the provisions of R. C. 731.23 requiring its publication, and that a subsequent failure to publish in approved form could not affect its validity. The case of *Tirpack* v. *Maro* (1967), 9 Ohio App. 2d 76, relied on by appellees, is distinguished because in that case the ordinance was not enacted as an emergency measure.

The advantage at this point seems to lie with appellants and their position that Ordinance No. 186 went into immediate effect on December 27, 1957, regardless of any defect in notice and posting required by R. C. 731.25. However, since the *validity* of the ordinance is the issue, it is necessary for this court to give consideration to the compliance or noncompliance, by the village council and the clerk of the council, to the provisions of R. C. 713.12.[1]

---

[1] R. C. 713.12 reads as follows:

"Before any ordinance, measure, regulation, or amendments thereto, authorized by Sections 713.07 to 713.11, inclusive, of the Revised Code, may be passed the legislative authority of the municipal corporation shall hold a public hearing thereon, and shall give at least thirty days' notice of the time and place thereof in a newspaper of general circulation in the municipal corporation. If the ordinance, measure, or regulation intends to re-zone or re-district ten or less parcels of land, as listed on the tax duplicate, written notice of the hearing shall be mailed by the clerk of the legislative authority, by first class mail, at least twenty days before the date of the public hearing to the owners of property within and contiguous to and directly across the street from such parcel or parcels, to the addresses of such owners appearing on the county auditor's current tax list or the treasurer's mailing list and to such other list or lists that may be specified by the legislative authority The failure of delivery of such notice shall not invalidate any such ordinance, measure, or regulation. During such thirty days the text or copy of the text of such ordinance, measure, or regulation, together with the maps or plans, or copies thereof, forming part of or referred to in such ordinance, measure, or regulation and the maps, plans, and reports submitted by the planning com-

Section 3 of Article XVIII of the Ohio Constitution, which confers home rule power, does not in and of itself empower an Ohio noncharter municipality to enact an emergency zoning ordinance; and such municipality, in the enactment of a *zoning ordinance*, must comply with R. C. 713.12, which requires a public hearing on the proposed ordinance, *preceded by a 30-day notice of the time and place of such hearing.*

The General Assembly, in adopting a statutory plan for the government of municipalities generally, as required by the Constitution, has specified the procedure to be followed with respect to the adoption of zoning ordinances. This procedure is designed to safeguard property rights and to give property owners a fair opportunity to enter a protest against an ordinance which may materially interfere with the use of their property or decrease its value.

Since the noncharter village of Wintersville was subject to the statutory enactments with respect to the procedure to be followed in the adoption of zoning ordinances, it was mandatory to adhere to the provisions of R. C. 713.12, which necessitate a public hearing, preceded by a 30-day notice of the time and place of such public hearing. *Morris v. Roseman* (1954), 162 Ohio St. 447.

Paragraph numbered "1" of the agreed statement of facts reads:

"* * * According to the minutes of that meeting, a hearing was set for December 27, 1957 and the clerk was ordered to post notices."

There is nothing in the record tending to establish

---

mission, board, or officer shall be on file, for public examination, in the office of the clerk of the legislative authority or in such other office as is designated by the legislative authority. No such ordinance, measure, or regulation which violates, differs from, or departs from the plan or report submitted by the commission, board, or officer shall take effect unless passed or approved by not less than three fourths of the membership of the legislative authority. No ordinance, measure, or regulation which is in accordance with the recommendations, plan, or report submitted by the commission, board, or officer shall be deemed to pass or take effect without the concurrence of at least a majority of the members elected to the legislative authority."

that the village council of Wintersville gave 30 days' notice of the time and place of the hearing as required by R. C. 713.12.

On the contrary, the clerk of the village council, as a witness for the intervening plaintiffs, testified, as follows:

"Q. What—Did you have any duty in connection with that ordinance?

"A. Yes, I was to post these ordinances.

"* * *

"A. I was to post these ordinances at five different places in the village of Wintersville after signed by the mayor and the clerk.

"Q. And do you recall of your own knowledge whether you did so with this ordinance?

"A. I posted all of them."

Obviously, the witness was testifying about posting the ordinance in compliance with the provisions of R. C. 731.25[2], which refers to adoption of ordinances and resolutions of a general nature. However, in this case we are con-

---

[2]R. C. 731.25 reads as follows:

"In municipal corporations in which no newspaper is printed as defined in Section 7.12 of the Revised Code, publication of ordinances, resolutions, statements, orders, proclamations, notices, and reports, required by law or ordinance to be published, shall be published in either of the following methods, to be determined by the legislative authority:

"(A) By posting copies thereof in not less than five of the most public places in the municipal corporation, to be determined by the legislative authority, for a period of not less than fifteen days prior to the taking effect thereof;

"(B) By publication thereof in any newspaper printed in this state and of general circulation in such municipal corporation.

"Notices to bidders for the construction of public improvements and notices of the sale of bonds shall be published in not more than two newspapers, printed in this state and of general circulation in such municipal corporation, for the time prescribed in Section 731.22 of the Revised Code.

"Where such publication is by posting, the clerk shall make a certificate as to such posting, and as to the times when and the places where such posting is done, in the manner provided in Section 731.24 of the Revised Code, and such certificate shall be prima-facie evidence that the copies were posted as required."

cerned with a *zoning ordinance*, which is specifically covered by R. C. 713.12. And, as pointed out above, the provisions of R. C. 713.12 must be followed in the enactment of zoning legislation by a noncharter village. If those provisions are not followed, then the zoning ordinance adopted is ineffective and invalid. The record clearly demonstrates that a 30-day notice of the time and place of a public hearing on Ordinance No. 186 was not published by the clerk of the council.

Accordingly, only and exclusively for the reasons hereinbefore stated, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.
O'NEILL, C. J., HERBERT and STERN, JJ., dissent.

O'NEILL, C. J., dissenting. There are only two issues presented to the court by this case.

The first issue is whether either the agreed statement of facts or the record of testimony in this case:

(A) *Raise the issue* of whether the legislative authority of the municipal corporation of Wintersville gave the required 30 days' notice of the time and place of a public hearing on the proposed zoning ordinance in accordance with the provisions of R. C. 713.12 before the ordinance was considered and passed; or

(B) *Support a ruling* that the legislative authority of the municipal corporation of Wintersville failed to give the required 30 days' notice of time and place of a public hearing on the proposed zoning ordinance, in accordance with the provisions of R. C. 713.12 before the ordinance was considered and passed.

The answer to both questions (A) and (B) is no.

The record shows that the 30 days required by R. C. 713.12 elapsed between the time the ordinance was introduced and the time of the third reading when it was considered and passed unanimously.

At the outset, with regard to the publication of the required notice of the time and place of a public hearing, it must be noted that the parties to this case did not raise that issue in the Common Pleas Court, the Court of Appeals or this court. Not only did they not present the issue to any of the courts by brief or argue it orally in this court, but that issue was not decided or referred to in the opinions of the Common Pleas Court or the Court of Appeals.

After oral argument, this court asked counsel for each of the parties to brief the question, including reference to the case of *Morris* v. *Roseman* (1954), 162 Ohio St. 447, 123 N. E. 2d 419.

*Roseman, supra,* deals with the requirement for the holding of a public hearing on a zoning ordinance preceded by a 30 day notice of the time and place of such hearing. It does not deal with the effective date of a zoning ordinance properly passed with the required number of votes as an emergency measure.

The answer is that not only are issues (A) and (B) above not raised by the agreed statement of facts or the record of testimony, but, more important, these issues are excluded from the case by the agreed statement of facts and the record of testimony, and in briefs of the appellees, opponents of the ordinance, filed both in the Common Pleas Court and in this court.

An examination of the agreed statement of facts demonstrates conclusively that the only references in that agreed statement are to the *publication or posting of notices of the ordinance after it was passed.* The issues are framed in that agreed statement of facts and it is unmistakably clear that there is no reference to any fact or to any issue with regard to the notice of the time and place of a public hearing under the provisions of R. C. 713.12.

The defendant-appellees, opponents to the ordinance, make it clear that the notice required by R. C. 713.12 is not an issue in this case by the statement in their brief filed in the Common Pleas Court which states the question in this case, which is as follows:

"An ordinance does not take effect until all requirements are followed and there is no question from the record, from the agreed statement of facts and from the evidence, that there was complete failure, *after the ordinance had been passed by council, as to the posting of the ordinance with a map attached and certification.*" (Emphasis added.)

Likewise, in the defendant-appellees' brief filed in this court, it is made clear that the only issue concerning publication of notice which is in this case is the notice required by R. C. 731.25, after the ordinance is passed. This language in the brief characterizing the issue in this case is stated as follows:

"9. An ordinance does not take effect until all requirements are followed and there is no question from the record, from the agreed statement of facts and from the evidence, that there was complete failure, *after the ordinance had been passed by council, as to the posting of the ordinance with a map attached and certification.*" (Emphasis added.)

A reading of the testimony in the record demonstrates that the sole question at issue before the Court of Common Pleas was whether R. C. 731.21, 731.23 and 731.25, which require the posting of notices *after an ordinance is passed,* and before it can become effective, were complied with.

Mr. Wilson, who was clerk of the village council in 1957 at the time the ordinance was passed, was examined with regard to that question.

Mr. Wilson's examination began with a presentation of a copy of the ordinance No. 186, which he identified. He then testified that the ordinance was passed while he was clerk of the village of Wintersville, and that the record showed that the ordinance was passed in December 1957. He was then asked:

"Q. *And what would be your duty in connection with that ordinance after it was passed?*" (Emphasis added.)

He was then asked:

"Q. What—Did you have any duty in connection with that ordinance?

"A. Yes, I was to post these ordinances.

"  *  *  *

"A. I was to post these ordinances at five different places in the village of Wintersville after signed by the mayor and the clerk.

"Q. And do you recall of your own knowledge whether you did so with this ordinance?

"A. I posted all of them.

"  *  *  *

[He then, in answer to questions, stated the places where he posted the ordinances.]

"Q. Do you recall of your own knowledge whether you posted Ordinance 186 in the five places?

"A. As I say, I posted all ordinances. I couldn't tell you by number but I posted all ordinances passed by the Village Council of Wintersville.

"Q. And for what length of time?

"A. Oh, that I'd say 30 days.

"  *  *  *

"Q. Do you recall if anything was attached to that ordinance?

"A. No, the only thing I would say is attached to the ordinance is this little bit of a map. I don't know what it is." (Emphasis added.)

There was then cross-examination concerning the map. Then this question was asked:

"Q. Now, this map that you are talking about was not posted with the ordinance in the five places?

"A. That map wasn't, no.

"Q. Do you recall the date that you posted this? Was that after the first reading?

"A. I didn't post them until after they were passed and signed by the mayor and signed by the clerk; then they were posted." (Emphasis added.)

Even a cursory reading of the testimony of Mr. Wilson makes it unmistakably clear that his testimony was concerned only with the issue of the posting of notices after the ordinance was passed, which posting is required by R. C. 731.25. There is no way that any of the above answers

158

can be construed out of context to have any reference to the statutory requirement of R. C. 713.12 with regard to the posting of notice of time and place of a public hearing to be held upon a proposed ordinance.

The record establishes that there can be no doubt about this when Mr. Stern, representing the appellees, stated, at the conclusion of Mr. Wilson's testimony:

"I think in all honesty, Your Honor, I would like to make a motion in view of the testimony of the elected duly sworn clerk who testified under oath *this particular zoning ordinance was posted but no map attached is in clear violation of law* and I ask the court to direct a verdict in favor of the defendants and declare it invalid. *That's the only question in this case.*" (Emphasis added.)

The majority opinion correctly characterizes the only testimony of record which is pertinent—that of Mr. Wilson, the clerk of the village council at the time the ordinance was passed in the following language:

"Obviously, the witness was testifying about posting the ordinance in compliance with the provisions of R. C. 731.25 which refers to adoption of ordinances and resolutions of a general nature."

The majority opinion accurately summarizes the record with regard to this issue in the following language:

"There is nothing in the record tending to establish that the village council of Wintersville gave 30 days' notice of the time and place of the hearing as required by R. C. 713.12."

The law, based on the state of this record, is settled.

The controlling rule of law was stated by this court in *Smith* v. *Juillerat* (1954), 161 Ohio St. 424, 119 N. E. 2d 611, paragraph one of the syllabus, which reads as follows:

"In the absence of evidence to the contrary, it is presumed that the procedure necessary to the legal adoption of legislation by a public legislative body has been followed."

This is a zoning case which arose in Mahoning County, in which the issues are strikingly similar to the issues in the instant case.

The only remaining issue in this case, which is dispositive, may be stated thus: Does a zoning ordinance, which contains an emergency clause and which is passed by the unanimous vote of the elected members of the council and signed by the mayor, take effect immediately?

The answer to this question is "yes," and the authority for it is found in R. C. 731.30, which provides, in pertinent part:

"* * * emergency ordinances or measures necessary for the immediate preservation of the public peace, health or safety in such municipal corporation, shall go into immediate effect. Such emergency ordinances or measures must, upon a yea and nay vote, receive a two-thirds vote of all the members elected to the legislative authority, and the reasons for such necessity shall be set forth in one section of the ordinance or other measure."

Appellees contend that unless the notices required by R. C. 731.21 and R. C. 731.23 are posted in accordance with the provisions of R. C. 731.25, the ordinance is invalid and of no effect.

Appellees rely upon the case of *Tirpack* v. *Maro* (1967), 9 Ohio App. 2d 76, 222 N. E. 2d 830. That case is not controlling. It involved an ordinance which was not enacted as an emergency measure.

R. C. 731.23 provides:

" * * * all ordinances, including emergency ordinances, shall be published in accordance with Section 731.21 of the Revised Code."

R. C. 731.21 provides, in pertinent part:

"All municipal ordinances, * * * required by law or ordinance to be published, shall be published as follows:
"* * *

"(C) * * * or by posting as provided in Section 731.25 of the Revised Code, at the option of the legislative authority of such municipal corporation."

And R. C. 731.25 provides, in pertinent part:

"* * * ordinances * * * required by law or ordinance to be published, shall be published in either of the following methods, to be determined by the legislative authority:

"(A) By posting copies thereof in not less than five of the most public places in the municipal corporation, to be determined by the legislative authority, for a period of not less than fifteen days prior to the taking effect thereof * * *."

The law, as stated in the majority opinion, is that the publication required by R. C. 731.21 and R. C. 731.23, in the form required by R. C. 731.25(A), requires the posting of notices with regard to the passage of an emergency ordinance. However, that requirement has no effect upon the effective date of the ordinance which is controlled by R. C. 731.30 when, as in the instant case, the ordinance is a properly adopted emergency ordinance.

In *Vansuch* v. *State, ex rel. Fetch* (1925), 112 Ohio St. 688, 148 N. E. 232, the *per curiam* opinion states, at page 689:

"It was held by this court in *Shryock, a Taxpayer,* v. *City of Zanesville* (1915), 92 Ohio St. 375, 110 N. E. 937, that the council of a municipality is authorized to pass emergency ordinances necessary for the immediate preservation of the public peace, health, and safety. Such ordinances do not require publication, and are not subject to the referendum, but go into immediate effect."

In *Holcomb* v. *State, ex rel. Coxey* (1933), 126 Ohio St. 496, 186 N. E. 99, paragraph three of the syllabus reads as follows:

"The duty and responsibility of determining the emergency and the necessity that a measure go into immediate effect are confided to the legislative branch of government. If the prescribed procedure for enactment thereof is followed, such measure goes into effect immediately upon its passage." *Shryock* v. *Zanesville* (1915), 92 Ohio St. 375, 110 N. E. 937.

The proper rule of law controlling in this case is:

Emergency ordinances or measures necessary for the immediate preservation of the public peace, health or safety, go into immediate effect, as provided in R. C. 731.30, notwithstanding the provisions of R. C. 731.23 requiring their publication.

R. C. 731.23 and 731.25 require publication of an emergency ordinance after it is passed, but are not controlling as to the effective date of such ordinance.

The judgment of the Court of Appeals should be reversed.

HERBERT and STERN, JJ., concur in the foregoing dissenting opinion.

STERN, J., dissenting. In addition to concurring in the Chief Justice's dissent, in my view, the narrow issue in this case is whether a noncharter municipality of Ohio may effectively enact an *emergency* zoning ordinance without complying with R. C. 713.12. In resolving that issue, a discussion of the applicable sections of Article XVIII of the Ohio Constitution is in order.

Article XVIII has been the subject of controversy since its adoption on September 3, 1912, and its effect upon both charter and noncharter municipalities has been the subject of numerous law suits. In *Perrysburg* v. *Ridgway* (1923), 108 Ohio St. 245, this court endeavored to put at rest the issue of the authority granted by Section 3 of Article XVIII of the Ohio Constitution, holding in paragraph five of the syllabus that:

"The grant of power in Section 3, Article XVIII, is equally to municipalities that do adopt a charter as well as those that do not adopt a charter, the charter being only the mode provided by the Constitution for a new delegation or distribution of the powers already granted in the Constitution. (*State, ex rel. City of Toledo,* v. *Lynch, Auditor,* 88 Ohio St. 71, 102 N. E. 670, 48 L. R. A. [N. S.], 720, Ann. Cas., 1914D, 949, disapproved upon the proposition that a charter is a prerequisite to the exercise of home. rule powers under Section 3, Article XVIII.)"

In addition to disapproving that prior holding, this court, in paragraphs one, three and four of the syllabus in *Perrysburg, supra,* provided, as follows:

"1. Since the Constitution of 1912 became operative, all municipalities derive all their 'powers of local self-

government' from the Constitution direct, by virtue of Section 3, Article XVIII, thereof.

"* * *

"3. The above constitutional grant of power to municipalities is 'self-executing,' in the sense that no legislative action is necessary in order to make it available to the municipality.

"4. The exercise of 'all powers of local self-government,' as provided in Article XVIII, Section 3, is not in any wise dependent upon or conditioned by Section 7, Article XVIII, which provides that 'a municipality *may* adopt a charter,' etc."

The holding in *Perrysburg* remains intact today insofar as it implies that under Section 3 of Article XVIII, both charter and noncharter municipalities "shall have authority to exercise all powers of local self-government," and further that they may "adopt and enforce within their limits such local police, sanitary, and other similar regulations, as are not in conflict with general laws."[3]

In 1954, this court examined the procedural restrictions with which noncharter municipalities must comply, holding in paragraph two of the syllabus in *Morris* v. *Roseman* (1954), 162 Ohio St. 447, that:

"An Ohio municipality which has not adopted a charter for its government, as authorized by Section 7, Article XVIII of the Constitution of Ohio, must, in the passage of its legislation, follow the procedure prescribed by the statutes enacted pursuant to the mandate of Section 2, Article XVIII of the Constitution."

With that portion of the syllabus of *Morris, supra,* I have no quarrel, for, as Justice Zimmerman correctly reasoned therein, there must be *procedural* guidelines for all municipalities in effecting their local self-government, and Section 2 of Article XVIII placed a mandatory duty

---

[3]The subject matter of the ordinance in question being zoning, it clearly falls within the category of police regulations and therefore may not be in conflict with general laws. However, neither party to this action has alleged any conflict in this instance.

upon the General Assembly to enact "general laws * * * to provide for the incorporation and government of cities and villages * * *." Justice Zimmerman then stated that: "If a municipality adopts a charter [under authority of Section 7 of Article XVIII] it thereby and thereunder has the power to enact and enforce ordinances relating to local affairs, but, if it does not, its *organization* and *operation* are regulated by the statutory provisions covering the *subject.*" (Emphasis added.)

A noncharter municipality then must comply with the *procedural* statutory requirements set forth by the General Assembly for the passage of ordinances, but this procedure may differ with regard to the nature of the ordinance being passed.

We are concerned herein with an ordinance passed as *emergency* legislation, and it should be of no consequence that its subject matter concerns zoning. Municipalities have authority to enact ordinances relating to zoning. (*Pritz* v. *Messer* [1925], 112 Ohio St. 628), and the constitutionality of emergency legislation enacted by municipalities has been upheld. (*Shryock* v. *Zanesville* [1915], 92 Ohio St. 375.)

Further, in *Vansuch* v. *State, ex rel. Fetch* (1925), 112 Ohio St. 688, 689, this court, referring to *Shryock,* stated that:

"* * * the council of the municipality is authorized to pass emergency ordinances necessary for the immediate preservation of the public peace, health and safety. Such ordinances do not require publication, and are not subject to the referendum, but go into immediate effect."

*Vansuch* involved an emergency ordinance calling for the reorganization of the police department. The court found that the ordinance had been passed as an emergency ordinance in compliance with proper procedure and that there was no evidence of any challenge by any proceeding until the bringing of the suit 60 days subsequent to the passage of the ordinance. The court then concluded, at page 689, that "no action of any kind appears to have been taken within the 30 days prescribed therefor by Section

164

4227-2, General Code. [R. C. 731.29.] In consequence whereof such ordinance must now be considered effective immediately upon its passage, and the question of its emergency character, determined by the council, will not be inquired into.'' The emphasis in that case was properly focused upon the *nature* of the ordinance, *i. e.*, emergency legislation, rather than its subject matter.

We are now involved, as was this court in *Morris* v. *Roseman, supra*, with an ordinance of the nature of emergency legislation, having zoning as its subject matter. I reiterate that I do not take exception to the holding in *Morris*, to the effect that noncharter municipalities must comply with the *procedural* guidelines set forth by the General Assembly under the authority of Section 2 of Article XVIII of the Constitution, and therefore, were this merely a zoning ordinance, I would agree that the requirements of R. C. Chapter 713 must be met. I do not, however, agree with that holding to the extent that it concludes that zoning ordinances and *emergency* zoning ordinances are one and the same and that each must be enacted in accordance with the procedure set forth in R. C. Chapter 713.

The General Assembly has adopted specific statutes governing procedures for the enactment, by municipalities, of ''emergency ordinances or measures necessary for the immediate preservation of the public peace, health, or safety in such municipal corporation[s]'' and that such ordinances ''shall go into immediate effect.'' R. C. 731.30. This section provides further that:

''Such emergency ordinance or measures must, upon a yea and nay vote, receive a two-thirds vote of all the members elected to the legislative authority, and the reasons for such necessity shall be set forth in one section of the ordinance or other measure.''

The classification of an ordinance as emergency legislation, then, is left to the discretion of the legislative authority of the municipality, and I see no justification for limiting this discretion on the basis of the subject matter

involved in the emergency legislation. Accordingly, I disagree with this court's unsupported analysis of the language of R. C. 713.13 and 713.14, found in *Morris, supra*, at page 451, and its holding therein in paragraph one of that syllabus, which the majority of this court has upheld today.

It is my opinion that Wintersville Ordinance No. 186 was properly enacted as emergency legislation,[4] and that paragraph one of the syllabus in *Morris v. Roseman, supra* (162 Ohio St. 447), should be overruled.

---

[4]Section 2 of Article 1-1 of Wintersville Ordinance No. 186 provides as follows:

"*Purpose.* There is hereby established a Comprehensive Zoning Plan for the Village of Wintersville, Ohio. This plan is a part of a long-range general plan to guide and facilitate the orderly and beneficial growth of the community and to promote the public health, safety, convenience, comfort, prosperity, and general welfare. More specifically, the purposes of this Comprehensive Zoning Plan are to encourage the social and economic stability of neighborhoods; to protect and conserve property values by minimizing conflicts in the use of neighboring property; to insure adequate open spaces between buildings; to act as a guide for the economical provisions of public facilities and services; and to assist private ownership in the enjoyment and use of land and buildings."

This statement of purpose, setting forth the necessity of being classified as emergency legislation, was substantiated by Section 2 of the ordinance which provides as follows:

"Effective date. In order to protect peace, health, safety, welfare, and general prosperity of the citizens of the village of Wintersville, Ohio, this ordinance is declared to be an emergency ordinance and shall go into effect immediately upon its passage and approval."